We'll move to our second case this morning in Ray Michael Helmstetter. Good morning, Your Honors. May it please the Court, I am Nick Tancredi. I'm attorney for Appellant Debtor Michael Helmstetter. We are here today seeking the reversal of an order of both the Bankruptcy Court and the U.S. District Courts affirming a settlement agreement, an agreement that involved Michael Helmstetter, an auto executive, very successful over 25 years, who suffered a series of defalcations at the hands of a business associate he acquired later in his career, Richard Grozzetti. He suffered defalcations which harmed him to the extent of $13 million. He suffered further defalcations by suffering legal malpractice from several attorneys, one of which represented him in the state court, the second, and as reflected in his latest third-party claim statement filed in court, that wrongly advised him to file Chapter 7 bankruptcy. Once in Chapter 7 bankruptcy, there is no indication that his assets were adequately evaluated. There was a finding, a proposal by the trustee adopted by the Bankruptcy Court and the U.S. District Court, that he was financially, hopelessly financially insolvent. Mr. Tancredi, I want to ask you a question about that, which deals with standing and with the insolvency issue. He indicated that his total liabilities were nearly $20 million on his bankruptcy forms, from what I understand. And so in order, I think, under our case law and under Article 3 to have standing, he has to show that he can recover more than $20 million. And I know you want the settlement reversed, but my question was that when the district judge, when Judge Pallmeyer went through and gave him credit, she gave him credit for $8 million, giving him the benefit of the doubt that he could recover half of the $16 million that was in dispute in the circuit court litigation in state court. You're familiar with what I'm talking about, right? Yes, Your Honor. Absolutely. But my understanding is that even if the settlement is vacated, the circuit court litigation is over. And under no circumstances can it be revived, ever. So he can't bring that litigation ever again. So Judge Pallmeyer gave him credit for $8 million, and I wonder why the credit shouldn't be zero. Your Honor, there are several fallacious predicates to that. First of all, and I acknowledge my knowledge may not be as current as the court's, but my understanding is that the state court action was merely stayed pending the appeal. So it wasn't. It's over. There's been a judgment entered, and it's over as far as I know. All right. Notwithstanding, Your Honor, we believe that there are sufficient procedural predicates for reopening that, particularly when one looks at the evidence available as against Mr. Rossetti. The evidence of record as set forth in the accounting reports is that Rossetti committed a series of defalcations that were compounded when Mr. Helmstetter was wrongfully advised to enter into Chapter 7. So even if we believe Mr. Helmstetter could survive the injuries he was inflicted upon, or inflicted upon him by Mr. Rossetti, we feel that the injuries inflicted upon him by wrongfully being advised to go into Chapter 7, unless mitigated by this court, would be even greater. Essentially, Your Honor, the other part of that analysis is that it's predicated upon any recoveries being reduced by a factor of 50%, which is predicated on nothing more than just a one-time comment from me in a conversation with the trustee. There's certainly no reason for that to be a pivotal point in anyone's analysis. The other point, Your Honor, is that that $16 million was predicated upon analysis of just some, but not all, of the years. Mr. Rossetti refused to provide adequate accounting records, hence the original action in state court for an accounting. So not only did Mr. Rossetti not pay millions of dollars of unpaid earnings, distributions, and dividends, which by operation of law, as we point out, those millions of dollars were always liquid assets of the estate. Can you walk us through how, even if we rule in your favor, does Mr. Helmstetter get anything, receive any distributions after the creditors are paid? Absolutely, Your Honor. And can you walk us through how that is? Absolutely. If you reverse this, Your Honor, I think the first thing that would be done is that application would be made for an immediate turnover order to Rossetti to turn over the millions of dollars of unpaid earnings, distributions, and dividends constructively received by Mr. Helmstetter at the point they were earned, held by Rossetti and Constructive Trust. Once those funds are turned over, now you have liquid assets and the financial ability to go after the other claims. The other claims are of such a magnitude, particularly as against the manufacturers, such as Fiat Chrysler, Nissan, Santander Bank, that we believe with a high degree of probability that they will far exceed that $20 million. And in fact, Your Honor, I would recommend— Well, there needs to be evidence of that. It's your burden here to prove the value of those claims. Not just a belief that they're valuable, but actual value. And there isn't any evidence in the record of that. The value of the claims on the schedules has been wildly inflated over time. Well, that's—I don't— Without explanation. Well, Your Honor, first of all, they were submitted and filed by Richard Hirsch, although he's now retired. He's certainly a long, respected, and very experienced member of the bankruptcy court. They stand as his proffer. There needs to be some evidence to back up those estimates. And in fact, I believe that that evidence was submitted with the accounting reports. If the court would take a look at or just reread the transcript, the evidence that was presented to the trustee and to the court in its different filings was referred to several times, as well as an offer to provide additional evidence. And what is that evidence? That would be the reports of the forensic accountants, the barrel groups. And we submitted extensive reports to the trustee in April. At that point, the trustee said that his discussions with Rossetti had gone to the point where he wouldn't entertain any more discussions with that. We offered that evidence again to the court at the hearing on September 1st. And that also is why we submitted motions to supplement the record, to provide additional information, and we asked for the appointment of a special master to quickly gather any other additional information that the court felt appropriate. The accounting firm's report doesn't back up any of the estimates. It just makes estimates on a spreadsheet. What's the support for that? Well, Your Honor, I would main—well, the support would be the file cabinet is full of documents to which the expert reports were predicated upon, Your Honor. And, again, those reports are certainly available, and the accountants are certainly available. We thought—I can't speak to Mr. Hirsch, but he obviously thought that we had made an adequate showing, and if there was a request for more information, that the court's mandate to do justice would request that. How were the valuations reached? By what method did this accounting firm arrive at the valuations of these claims? They looked at the financial records that were available, also from Rossetti. Many of the other claims were predicated upon a process called channel stuffing, whereby manufacturers, to benefit their financial balance sheets at the end of their year, stuff unordered inventory down auto dealerships. It's a common practice. It's been prosecuted across the country, and it was inflicted upon Mr. Helmstetter. And they looked at what happened. They looked at—they reviewed the financial records of those dealerships, and they came up with damage estimates. And that's laid out in the reports. It was laid out in detail in the reports that we submitted to the trustee. It was summarized. And again, Your Honor, that's why, if there was any question of that, we believe that justice dictated the opportunity to allow a special master to do a quick inquiry or for us to conduct an additional evidentiary hearing or conduct a quick additional discovery. More importantly, Your Honor, there is nothing that shows the method by which the trustee came to his valuation. Well, it's not the trustee's burden to establish standing. It's yours. I understand, Your Honor. But again, when we talk about having a possibility of a financial surplus, there is a requirement that that be thoroughly and adequately investigated. And there's no indication that that was the case. And either under—both under Article III or Article II, the fact that he reasonably anticipated that surplus stands. And we also say that the reports of the experts are uncontradicted, Your Honor. Anything further? Your Honor, very simply, that the mandate of—the overarching mandate is to do justice here. Helmstetter came as a victim seeking, you know, some level of protection. He was not sophisticated. Again, having been victimized by his poor counsel in Chapter 7 when it wasn't really necessary, he seeks appropriate justice here from the court. We believe that there were serious systemic deficiencies here. In fact, from the standpoint that millions of dollars of liquid assets, which were always available to the court, which could have financed recovery efforts, were not recognized and not utilized, we submit these very respectfully as an adequate predicate for appropriate remediation from the court. Thank you, Your Honor. All right. Thank you. Mr. Stern. Yes. May it please the court. Good morning. My name is Gregory Stern. I appear here on behalf of David Herzog, not individually, but as the Chapter 7 trustee of the bankruptcy case of Michael Helmstetter. Mr. Helmstetter and counsel's arguments are extremely troubling as they fail to focus upon what is the issue on appeal here. The issue on appeal here is not whether Judge Cox's order approving the settlement or sale was appropriate or beyond that. The only issue on appeal now is whether or not this debtor had standing. Judge Cox made no findings, entertained all of Mr. Helmstetter and his counsel's arguments, considered everything. She did not at any time suggest that Mr. Helmstetter did not have standing. That was subsequently brought or determined by Judge Pallmeyer on the trustee's motion to dismiss the appeal. The Seventh Circuit has longstanding law that standing in a bankruptcy case for a debtor is based upon a pecuniary interest. The only way there's a pecuniary interest is if all claims are paid in full, all costs of administration are paid in full, and there's money left over for the debtor. That is simply not the case here. In fact, nothing could be further from the case, and Judge Pallmeyer hit it on the head when she criticized or critiqued the three sets of schedules. In particular, the second set of schedules, which merely mirrored the Barrow report and proposed valuations that are totally unsupportable in fact were in the law. Well, if the court gives credence to Helmstetter's position that there's $20 million in value for these purported claims against third parties, does your standing argument fail? Well, the reality of this situation here is that those $20 million of claims have been monetized by the trustee and realized less than $30,000 or $40,000. In fact, there's a tranche of these claims that is currently before Judge Cox for approval to be sold to Mr. Helmstetter for $20,000. Other claims or tranches of claims were sold for $5,000, $500, and $1. So despite this overly optimistic and unrealistic valuations suggested by Mr. Helmstetter, it's simply not the facts of this case. And the troubling part of this case is that the appellant did not focus upon standing. His opening brief is extremely long on argument and is absent of all case law or suggesting sites to precedent, at least from pages 31 through 48 of the argument section. So this case is now, because of the trustee's motion to dismiss this appeal before this court, it is still based upon the lack of standing. And now we have the further argument of mootness under 363M and equitable mootness. Those areas of inquiry are given extremely short shrift by this appellant and are not addressed in any way that can... There is no cogent argument presented in opposition to suggest that he has standing or that there is not equitable mootness or mootness under 363M. The Circuit Court case, during the appeal before Judge Pallmeyer, the trustee and the purchaser, Rosetti, of Kingdom Chevrolet, did not consummate the agreement. They waited until Judge Pallmeyer's decision was entered in. It was an extremely detailed decision that examined the entire record, considered everything, and came down and criticized the Second Amendment schedules, the Barrel Report, and this fantasy that these assets were worth $20 million or anything really more than $555,000, which is what the market showed. The trustee is tasked with monetizing assets. The best way to determine what an asset is valued at is by offering it to someone for sale to see if there's a higher price. It never happened here. We got the highest amount of money that could be gotten for these claims against Kingdom Chevrolet and the Rosetti entities. Going to the mootness argument, mootness under 363M is that the transfer proceeded, which it did after Judge Pallmeyer's opinion was entered, that you have a good faith buyer and the transaction was completed, both of which are present here, and that there was no state pending appeal. No state pending appeal ever was requested during the pendency of the appeal before Judge Pallmeyer. We also have now equitable mootness, which is essentially the same, but it's where the challenge settlement agreement has been substantially consummated, which it has been. Rosetti paid the trustee the money. The trustee and Rosetti entered into orders dismissing the circuit court case with prejudice. So this settlement cannot be unwound. And the appellant did not seek stay of the bankruptcy court order or the order. So we have mootness on two different levels. We have no standing. This is a case that... Well, the second argument, the 363M argument, doesn't come into play unless there's standing. So it's a fallback argument by the trustee here. And we've since clarified that it's really not about mootness, which is really more of a jurisdictional term. It's just about a defense that consists in the argument that the sale cannot be unwound under the statute once it's consummated. But, again, that argument doesn't even come into play unless standing is established, which is a pretty steep threshold here. Yes, ma'am. And because there's no standing, there's no subject matter jurisdiction. Absolutely. And counsel and Mr. Halpstead have tried desperately to expand the record. They have misstated the record. The record is complete with incomplete. The record, as suggested by Mr. Halpstead, is not what the record in this case is. Do you know by what methodology the Barrow Group valued these claims? Is that apparent from the record? Absolutely not. And it wasn't apparent from our investigation and our discussions with them or with Mr. Tancredi. These... I mean, the report itself is just a series of numbers without any explanation about how they were achieved or arrived at? I don't. You know, it's been quite a while since I've actually looked at the report. I did it in the beginning when these negotiations or this process was ongoing. Subsequently, Mr. Quaid has been handling the majority of this case. I don't recall anything or I've never heard of anything. I have oversight of the entire case. I keep it all together. And this is where we are for the trustee. The damage that has been done by these appeals is overwhelming. The statement that there will be no money for unsecured creditors probably isn't true. Hopefully, there will be some money. There's substantially less money now than there would have been if these, what we believe, are frivolous appeals had not been interposed. The primary creditors, although priority unsecured creditors, would be a former Mrs. Helmstetter, who would have had some sort of support obligation due to her, and most likely the United States government for taxes. Mr. Rossetti's efforts have really only harmed himself here by depleting the assets on the estate that can be available for distribution to otherwise non-dischargeable debts such as support or taxes. So it's a rather unfortunate case. We hear that Mr. Rossetti was such a successful executive on the one hand, and then we hear he was ill-informed. There's been no evidence whatsoever, and the record is absolutely void of anything about misfeasance, nonfeasance, or malfeasance on behalf of accountants or attorneys. Mr. Helmstetter filed Chapter 7 voluntarily. He got the benefit of the Chapter 7. He got a discharge. He merely doesn't want to suffer the consequences, the loss of assets which really aren't there and don't amount to anything that would ever yield a surplus in this estate. Respectfully, I'd ask that you deny the—well, grant the—hold that Mr. Helmstetter has no standing, and we'll rest on our brief.  Yes, ma'am. Mr. Tancredi. Your Honors, if I might read quickly from a document filed November 18, 2020, Document 16-2. This is the Forensic Accounting Report of Bureau Forensic Accountant, CPA, Deb Temkin. Our preliminary calculations show his claims total approximately $33 million. Commenting on our preliminary accounting analysis, it appears that debtors' assets exceed debts allegedly by approximately $20 million. As a result, we have not seen a factual predicate upon which one might reasonably conclude debtor is insolvent. Our review to date raises the question as to why debtor filed bankruptcy at all. Again, due to the materiality of the discrepancy between our calculations and the trustee's settlement, further investigation could be warranted. I raise these issues— How did they determine the value of his claims? I believe they looked at just the—I can't speak to that, Your Honor. That's a problem, I think. I mean, here you claim that there are claims against third parties for approximately $20 million, and they seem to me to be very speculative, and there's not really development of how you get to $20 million in the brief. And I just wonder if the CPA looked at the complaint, which said this claim is worth $8 million, and said, okay, $8 million. They have no ability, I don't think, to evaluate what the claim is actually worth or what settlement value the claim might actually be. Your Honor, these are highly credentialed and highly experienced CPAs from a very reputable firm. Well, I'm not challenging that, but I don't understand how any CPA could come in and miss the job of a lawyer, typically. Your Honor, the decisions cannot be predicated on speculation, nor should they be predicated on decrementing a $16 million claim to $8 million because of a comment from a sole practitioner. Right, I already told you, I think that should be zero. I understand that, Your Honor. I'm only one vote, but— Well, I understand that, Your Honor. Well, if it is $8 million, as the district court found, do you believe it was in the best interest to approve the settlement? No, absolutely not. The whole analysis bagging up that settlement is speculative. There's no foundation. We're talking about market analysis showed this. Where's the market analysis? Where's the analysis from the trustee? Where's any indication? Well, there's a lot hard to really grasp here. For example, why did the schedules change so dramatically? Because initial counsel was incompetent. We brought in Mr. Hirsch, one of the foremost and most highly respected persons there were. He worked hard and fast to provide accurate information. There were initial problems with the 2004 examination from prior counsel who's now being under a cloud of malpractice. Well, then why, if the Barrow Group is so competent, why is it so difficult to answer what their conclusions were based on? I'm not hearing. Well, other than their analysis of the financial records made available to them, Your Honor, I mean, to give more detail, I think we'd require them to be present to have more evidence. I mean, every CPA reviews the financial records as between the relationships with the manufacturers, what their intended sales were, how the dealerships were damaged. All right. Thank you very much. Your time has expired. Thank you. Our thanks to both counsel. We'll take the case under advisement.